UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MICHAEL COLLIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-00104-SLC |
| | ) | |
| CITY OF FORT WAYNE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the Court is a motion, filed by Defendants City of Fort Wayne, Boyce Ballinger, and Dale Llewellyn, which seeks to exclude or limit the testimony of Plaintiff Michael Collier's non-retained experts. (DE 40). Collier has filed a response in opposition to the motion (DE 41), and Defendants have filed a reply (DE 42). The motion is therefore ripe for ruling. Defendants' motion will be GRANTED IN PART and DENIED IN PART for the reasons set forth below.[1]

**I. BACKGROUND**

This § 1983 action arises out of a welfare check that took place on January 10, 2014, when Fort Wayne Police Officers went to the home of Plaintiff Michael Collier after a friend of Collier requested that the Fort Wayne Police Department conduct a welfare check. (DE 1 ¶ 4). Collier alleges that during the welfare check, officers kicked in the door to his apartment and entered without his consent, whereupon they proceeded to physically beat and taser him. (DE 1 ¶ 5). Collier purportedly suffered burns to his chest, neck, and back from the taser. (DE 1 ¶ 6).

---

[1] Federal question jurisdiction exists under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (DE 11).

Collier initiated this action on May 1, 2015. (DE 1). The Court held a preliminary pretrial conference on October 15, 2015, setting the following deadlines: November 6, 2015, for initial disclosures under Rule 26(a)(1); February 1, 2016, for Collier's expert witness disclosures under Rule 26(a)(2); March 1, 2016, for Defendants' expert witness disclosures under Rule 26(a)(2); and May 20, 2016, for the completion of all discovery. (DE 12; DE 14). On March 1, 2016, the Court extended the following deadlines: April 15, 2016, for Collier's expert witness disclosures under Rule 26(a)(2); May 16, 2016, for Defendants' expert witness disclosures under Rule 26(a)(2); and July 29, 2016, for the completion of all discovery. (DE 31). The discovery period, which was later extended through March 30, 2017, has now closed. (DE 52).

## II. LEGAL STANDARD

"[A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony . . . ." Fed. R. Civ. P. 26(a)(2)(B). If the witness is not required to provide a written report, the disclosure must state: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Federal Rule of Civil Procedure 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a)," "the party is not allowed to use that

2

information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Westefer v. Snyder*, 422 F.3d 570, 584 n.21 (7th Cir. 2005) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)).

### III. ANALYSIS

Defendants state that Collier identified Dr. Troy Clouse, Nurse Lisa Strausbaugh, Dr. Mark Giese, Dr. Paul Kaplanis, Dr. Andreana Hodgini, Dr. Jon Karl, and Dr. Jay Fawver for the first time as non-retained experts in his supplemental initial disclosures made on August 24, 2016. (DE 40 ¶ 3). In his supplemental initial disclosures, Collier stated that the testimony of Drs. Clause, Giese, Kaplanis, and Hodgini, as well as the testimony of Nurse Strausbaugh, "will include testimony as to their observations, assessments, and treatment of Plaintiff on January 10, 2014 at St. Joseph Hospital; costs charged for the services provided and that those costs were reasonable; and 'that what injuries the Plaintiff had were consistent with the Plaintiff's report of force the Defendants and FWPD officers used on him during his detention and arrest.'" (DE 40 ¶ 15 (quoting DE 40-2 at 5-6)). Collier's supplemental initial disclosures also stated that the testimony of Dr. Karl "will include the medical care, services, and cost of services provided to Plaintiff, and 'that any pre-existing pain and medical conditions that the Plaintiff had been treated for prior to 1-10-14 were exacerbated and worsened by the injuries the Plaintiff suffered during his detention and arrest.'" (DE 40 ¶ 16 (quoting DE 40-2 at 6)). Collier's supplemental initial disclosures also stated that "Dr. Fawver will testify to his observations and assessments of Plaintiff, treatment provided to Plaintiff, costs of treatment to Plaintiff, and 'that what injuries

3

Plaintiff had were consistent with the Plaintiff's report of the force the Defendants used on him during his detention and arrest,' presumably meaning Plaintiff's alleged mental injuries." (DE 40 ¶ 17 (quoting DE 40-2 at 6)).

Defendants contend that Collier's supplemental initial disclosures "amount to nothing more than a summary of topics, a brief reference to treatment provided, and a conclusory expert opinion, without specifics," and the disclosures "do not include any facts regarding Plaintiff's alleged injuries, the actual treatment of such, or how those alleged injuries are consistent with Plaintiff's allegations." (DE 40 ¶ 19). Defendants argue that to the extent these experts are to provide expert testimony as to causation, as with Dr. Karl, or to provide testimony that Collier's injuries are consistent with his allegations, as with the other non-retained experts, his supplemental disclosures fail to meet Rule 26(a)(2)(C)'s requirements. (DE 40 ¶ 20). Because Collier's disclosure of these non-retained experts was "exceedingly untimely," and because Collier "has also wholly failed to submit the required summary for the proposed testimony of [his] non-retained experts," Defendants contend that the Court should entirely exclude the expert opinion testimony of Drs. Clouse, Giese, Kaplanis, Hodgini, Karl, and Fawver, as well as that of Nurse Strausbaugh; alternatively, Defendants request that the Court should limit these non-retained experts' testimony to only their observations and treatment of Collier. (DE 40 ¶¶ 21-22).

In Collier's response to Defendants' motion, he opposes the exclusion or limitation of his non-retained experts' testimony. Collier states that Defendants had additional time after his supplemental disclosures, before the close of discovery, during which Defendants could have deposed any of his non-retained experts. Collier contends that his supplemental initial

disclosures provided Defendants with very specific information regarding the scope, nature, and substance of each non-retained expert's testimony, and thus he argues that there is no risk of undue prejudice or surprise to Defendants. Collier believes that his delay in disclosing the non-retained experts was justified, given the delays in obtaining copies of his medical records, from which his non-retained experts were identified. Additionally, Collier argues that even if testimony regarding causation is excluded, the non-retained experts should be permitted to testify regarding non-expert opinion matters. Collier distinguishes a case cited by Defendants, *Brunswick v. Menard, Inc.*, No. 2:11 CV 247, 2013 WL 5291965 (N.D. Ind. Sept. 19, 2013), on grounds that the case's holding "suggests that at least causation determinations made at the time of treatment could be admissible." (DE 41 at 4-5). Collier argues that even if the Court restricts his non-retained experts from testifying regarding their opinions as to causation, they should still be permitted to testify as to their firsthand knowledge and observations of his physical and mental state following his encounter with Defendants; they should be permitted to testify regarding the services and care they provided to Collier for his injuries, as well as the cost of that care; and they should be permitted to testify regarding any statements made by Collier in the course of seeking treatment from them, even if his statements were about the cause of his injuries.

Defendants' reply brief states that Collier's arguments made in his response fail to establish either substantial justification for or harmlessness of his late disclosure, and fails to cite any suitable authority to support his positions. Defendants further distinguish *Brunswick* as being unpersuasive in this case, given that the facts of that case were different from those here, as the plaintiff in *Brunswick* had originally named the physicians as fact witnesses in her initial

disclosures and only supplemented her disclosures less than a month after her expert disclosure deadline to include causation testimony, where her original disclosures stated that one of the doctors would testify about the injuries caused by the accident. Defendants argue that Collier has not shown that his failure to meet the expert disclosure deadline was substantially justified or harmless because he never states what the delays were in the case or why they substantially justify his failure to provide any indication that he intended to present expert testimony. Because Defendants had no indication that Collier was going to present expert testimony, they did not obtain a rebuttal expert, and the deadline to do so has passed; thus Defendants argue that Collier's failure to timely disclose was not harmless. Defendants further contend that even if Collier's disclosures were timely, they would still be inadequate because the broad topics listed for testimony and single-sentence explanation of the expert opinions does not meet Rule 26(a)(2)(C)(ii)'s requirement for a summary of the non-retained experts' opinions. Finally, Defendants contend that in the alternative, the testimony of Collier's non-retained experts should be limited to what they observed at the time of treatment, and the treatment itself, given that Collier did not submit any expert reports.

It appears that Collier's arguments in opposition to the exclusions or limitation of his non-retained experts' testimony arises out of his contention that, while he failed to disclose any of the non-retained experts by the extended expert disclosure deadline of April 15, 2016, set by the Court, he only failed to meet the deadline due to delays in obtaining his medical records, from which the non-retained experts were identified. However, deadlines set by the Court "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Indeed, as noted by Defendants, Collier has failed to explain what caused the delays in obtaining his

medical records, and he never sought an extension of his April 15, 2016, deadline to make his expert disclosures. Collier has not shown good cause as required by the Federal Rules of Civil Procedure to modify his expert disclosure deadline after its expiration.

As a result, Collier failed to make his expert disclosures as required by Rule 26(a); Rule 37(c)(1) therefore requires that Collier is not allowed to use these witnesses "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In making a determination as to whether a failure to disclose is substantially justified or harmless, which is left to the discretion of the district court, the court should consider the following factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Westefer v. Snyder*, 442 F.3d 570, 584 n.21 (7th Cir. 2005) (quoting *David v. Caterpillar, Inc.*, 324, F.3d 851, 857 (7th Cir. 2003)). Collier has not shown that his failure to disclose these non-retained experts was substantially justified, given that he has not provided any explanation as to why delays occurred in obtaining his medical records from which the non-retained experts were identified. Thus, the Court is unable to consider whether it was Collier's bad faith or willfulness that caused his failure to disclose the experts as required.[2] Collier has also not shown that his failure to disclose his non-retained experts was harmless. While he argues that Defendants were not prejudiced because the discovery period continued after he made

---

[2] Other filings in this case indicate that the delays were likely the result of Collier failing to timely respond to requests from his own counsel for signed medical authorizations and other requested information. (*See* DE 51 ¶¶ 9-12; DE 38 ¶ 6; DE 27).

his supplemental initial disclosures, and he states he would not have objected had Defendants also proposed their own non-retained experts after their expert disclosure deadline had passed, this does not mean that his failure was harmless. At this point, for the Court to find that Collier's failure to timely disclose his experts was harmless, the Court would have to reopen discovery and reopen Defendants' expert disclosure deadline. These deadlines were already extensively extended due to delays caused, in large part, by Collier's inaction. The Court is not inclined to reopen these expired deadlines because doing so would only further delay resolution of this case, particularly as Collier has provided no compelling reason for the Court to do so. Accordingly, Collier's non-retained experts will not be permitted to provide expert opinion testimony.

The Court will now turn to Collier's arguments that his non-retained experts should be permitted to testify as fact witnesses. Collier contends that his experts should be permitted to testify regarding "their firsthand knowledge and observations of [his] physical and/or mental state following his encounter with the Defendants"; the "services and care they provided to the Plaintiff for his injuries, and the cost of that care"; and "any conversations and statement the Plaintiff made in the course of seeking treatment from them, even if his statement(s) were about the cause of his injuries." (DE 41 at 5). The Court agrees, particularly given the fact that the discovery period had not closed when Collier supplemented his initial disclosures, and Defendants could have sought to depose these healthcare providers regarding their treatment of Collier. *See Brunswick*, 2013 WL 5291965 (denying defendant's motion to exclude the testimony of plaintiff's healthcare providers "with respect to their testimony concerning plaintiff's treatment gleaned in their capacities as treating physicians," but granting the motion to

8

exclude "as to any testimony by them concerning causation or prognosis"). Thus, Collier's non-retained experts will be permitted to testify as factual witnesses.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion (DE 40) is GRANTED IN PART and DENIED IN PART. Drs. Clouse, Giese, Kaplanis, Hodgini, Karl, and Fawver, and Nurse Strausbaugh may not offer expert testimony; however, they may testify as fact witnesses regarding their treatment of Collier.

SO ORDERED.

Entered this 11th day of April 2017.

/s/ Susan Collins<br>
Susan Collins,<br>
United States Magistrate Judge